No. 10,372.

## CORDAS v. RYAN.

Decided July 3, 1922.   Rehearing denied February 5, 1923.

Will contest.   Judgment for contestant.

*Reversed.*

*On Application for Supersedeas.*

1.  WILL—*Marriage—Evidence.*   Evidence reviewed, and held not to
    support the contention of contestant in a will case, that she was
    the wife of the testator.

2.  MARRIAGE—*Common Law.*   The proof, by conduct alone, of a com-
    mon law contract of marriage must have at least something in
    it not merely consistent with marriage, but inconsistent with
    any other relation.

*Error to the District Court of the City and County of
Denver, Hon. Clarence J. Morley, Judge.*

Mr. WILLIAM H. DICKSON, Messrs. ROTHGERBER & APPEL,
Mr. L. J. STARK, Mr. N. C. CALOGERAS, for plaintiff in
error.

Messrs. ENTERLINE & MALEY, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiff in error was the proponent of the will of
N. D. Danicks, a Greek by birth, and otherwise known as
Nicholas Demetrios Danikas.   The defendant in error con-
tested the will, claiming to be the common law wife of the
testator, married without ceremony after the will was
made, by which marriage the will was revoked.   She was
defeated in the county court but on appeal to the district

court was successful. The ground claimed for reversal is that the evidence shows no marriage of any sort but merely an illicit relation concealed by pretense of marriage or rather by a pretense of the relation of husband and wife.

We think no marriage was shown.

There is no direct evidence of the matrimonial contract.

Taking the evidence in the light most favorable to. contestant, and omitting the testimony against her, we find the essential facts are as follows:

In 1919 and 1920 Frances Ryan, the contestant, was working for Danicks as cashier and bookkeeper of his restaurant in Denver. He treated her affectionately. In 1919 and 1920, while she was in Kansas City, he wrote her letters; except one, however, these letters contain little if anything showing an engagement to marry; in that one he expresses the hope that she will be his wife. He wrote at least one letter to a friend saying he was going to marry her. In his will, dated January 6, 1921, he left a legacy of $2,000. "to Frances Ryan, a faithful servant in my employment." On January 25, 1921, being in very bad health, he went from Denver to French Lick Springs, Indiana, and took the contestant with him. They occupied the same stateroom and berth, and she referred to him in his presence as her husband. They registered at the hotel at their destination as man and wife and treated each other as such. Getting no benefit at the Springs, he went to Rochester, Minnesota. There they registered and conducted themselves as before. He was treated in a hospital there and introduced her as his wife to doctors and nurses. During this journey she wrote a number of letters to friends and acquaintances of herself and testator, some purporting to be from them both, some signed by her in both names but her signatures were all "Frances" with no surname. She received letters under the name of Miss Frances Ryan. She did not indicate or suggest in her letters that she should be addressed otherwise nor that she was married nor did he in his letters. He underwent a severe surgical operation and died March 22, 1921. The body was brought

to Denver for burial and the permission for removal required under the laws of Minnesota stated that it was to be "accompanied by Mrs. (?) Nicholas Danicks as escort." She went to the funeral and testifies that she there claimed to be "his nearest relative," (she does not say widow) and for that reason insisted on riding and did ride in a car nearer the hearse than the one to which she was first assigned. The funeral was on Sunday. On Monday she consulted a lawyer and on Wednesday she was advised that her marriage revoked the will and proceeded accordingly.

The learned judge of the district court was of the opinion that the case was controlled by the *Morgulski Case*, 69 Colo. 223, 193 Pac. 725, but we can see no support for this case there. The defect here is that the whole story is consistent with an intentional illicit relation. It more resembles *Peery v. Peery*, 27 Colo. App. 533, 150 Pac. 329. The Morgulskis had no ceremony but they stated a reason, the opposition of her father. There was no possible reason to prevent a ceremony to unite Danicks and Miss Ryan before they took the train or at any time afterwards. They had intended to marry long before, if at all. The Morgulskis revealed their contract of marriage (not contract to marry) to her mother and the marriage relation was maintained in the mother's house. Danicks stated his intention to marry contestant but they revealed their alleged marriage to no one except those to whom they must reveal it in order to maintain their illicit relation, the Pullman porter, the hotel proprietors and employes, nurses, doctors, hospital attendants, etc. With the strongest reasons for announcing and none for concealing it, if it existed, they concealed their marriage from Denver people. Morgulski told his friends and employers of his marriage. In his application for the employment in which he lost his life, in answer to the question to whom notice should be given in case of accident, he gave the name of his wife, Lillian Morgulski, at her mother's address where they had maintained their relations. Neither Danicks nor contestant

ever suggested to their Denver acquaintances that they were married, though she had a sister in that city. The Morgulskis had a verbal contract of marriage to which they, in effect, made her mother a witness. There is no evidence of any contract of marriage in the present case except the relations we have detailed. In short there was in the *Morgulski* case much, in this nothing, inconsistent with an illicit relation.

The court below also put its decision partly on the ground that relations will be presumed to be moral rather than immoral. Some cases so state and the principle may be a true one, but to rest a case of proof of marriage on that alone is to presume every sexual relation moral. The proof by conduct alone of a common law contract of marriage must have at least something in it not merely consistent with marriage, but inconsistent with any other relation. There is not here that "habit and repute of marriage" which is often such strong evidence of an actual matrimonial contract.

Both parties have asked that the case be determined on application for a supersedeas, we therefore order the reversal of the judgment and remand the cause for a new trial.